J-A29042-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | | |
|---|---|---|---|
| Z.W., | | : | IN THE SUPERIOR COURT OF |
| | | : | PENNSYLVANIA |
| | Appellant | : | |
| | | : | |
| | v. | : | |
| | | : | |
| J.Z., | | : | |
| | | : | |
| | Appellee | : | |
| | | : | No. 779 WDA 2014 |

Appeal from the Order Entered April 16, 2014,
in the Court of Common Pleas of Allegheny County,
Family Court, at No(s): No. FD 08-008538-004

BEFORE:   FORD ELLIOTT, P.J.E., ALLEN, and STRASSBURGER, JJ.*

MEMORANDUM BY STRASSBURGER, J.:          **FILED NOVEMBER 13, 2014**

Z.W. (Mother) appeals from the trial court order granting J.Z. (Father) shared legal and physical custody of the parties' nine-year-old son, D.Z. We affirm.

This contentious custody litigation began in 2009. The facts of this case are well-known to the parties and, in light of our disposition, we will not recite them in full here. Of note to this particular appeal, the record indicates that, in 2012, Father petitioned to modify the existing custody order, which had been in place since 2009.  The matter proceeded to trial, following which the trial court entered an order modifying the physical custody arrangement to a week-on-week-off schedule.  The new order granted Father roughly four extra days of custody per month. Additionally, the court's order created a

*Retired Senior Judge assigned to the Superior Court.

custody schedule for the summers of 2014 and 2015. Finally, the trial court

kept the shared legal custody arrangement from the 2009 order.

Mother timely filed a notice of appeal. She presents the following

questions for our review.

> 1. Did the [t]rial [c]ourt err and abuse its discretion in reducing physical custody time of the child with [Mother], contrary to the child's best interest, contrary to the evidence presented regarding the statutory factors to be considered in custody, and without support by the weight of the evidence presented at trial?
>
> 2. Did the [t]rial [c]ourt err and abuse its discretion in failing to provide [Mother] with legal custody to address matters such as doctor's visits, travel and passport matters, as well as extracurricular activities, contrary to the child's best interest, contrary to the evidence presented regarding the statutory factors to be considered in custody, and without support by the weight of the evidence presented at trial?
>
> 3. Did the [t]rial [c]ourt err and abuse its discretion in setting a summer schedule which could result in too great a period of physical custody of the child apart from the [Mother], contrary to the child's best interest, contrary to the evidence presented regarding the statutory factors to be considered in custody, and without support by the weight of the evidence presented at trial?

Mother's Brief at 24 (trial court answers omitted).

Following our review of the certified record, the briefs for the parties,

and the relevant law, we conclude that the opinion of the Honorable Kathryn

M. Hens-Greco thoroughly addresses and correctly disposes of Mother's

issues and supporting arguments. Accordingly, we adopt the trial court's

opinion of June 12, 2014 as our own, and affirm the court's disposition of

Mother's issues on the basis of that opinion. The parties shall attach a copy

J-A29042-14

of the trial court's June 12, 2104 opinion to this memorandum in the event of further proceedings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 11/13/2014

A 29042-14

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

Z.W.,

              Plaintiff,

    v.

J.Z.,

              Defendant.

**CHILDREN'S FAST TRACK**

OPINION

No.: FD-08-008538-004
779 WDA 2014

BY:

Honorable Kathryn Hens-Greco
440 Ross Street
Suite 5077
Pittsburgh, PA 15219

COPIES TO:

Counsel for Plaintiff:

Jay Blechman, Esquire
Steiner & Blechman, L.L.C.
310 Grant Street
Suite 3220
Pittsburgh, PA 15219

Counsel for Defendant:

Sophia Paul, Esquire
Bunde Gilotti Mulroy & Shultz, P.C.
223 Fourth Avenue
Suite 500
Pittsburgh, PA 15222

FILED

'14 JUN 12 PH 3: 35

DEPT. OF COURT...
CIVIL FAMILY...
ALLEGHENY CO...

"A"

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## FAMILY DIVISION

|  |  |  |  |
|---|---|---|---|
| Z.W., | | : | **CHILDREN'S FAST TRACK** |
| | | : | |
| | Plaintiff, | : | No.: FD-08-008538-004 |
| | | : | 779 WDA 2014 |
| v. | | : | |
| | | : | |
| | | : | |
| J.Z., | | : | |
| | | : | |
| | Defendant. | : | |

## OPINION

HENS-GRECO, J.                                                          June 12, 2014

In this matter, Z.W. ("Mother"), appeals this Court's Order of April 16, 2014, which, after a three-day custody trial, and a motion for reconsideration and clarification, granted J.Z. ("Father") shared custody of the parties' nine-year-old son, D.Z. *See also* Order of Court, dated March 24, 2014. After the initial March order, Mother motioned for reconsideration and clarification; this Court agreed to reconsider, but did not grant all of Mother's requests. *See* Order of Court, dated April 17, 2014. This Court then altered the post-trial custody order of March 24, 2014. After the reconsidering Mother's requested relief, it issued a new custody order including the modifications and clarifications this Court deemed appropriate. For the sake of clarity, the custody order of April 16, 2014 wholly replaced the custody order of March 24, 2014, even though only some paragraphs are changed. *See* Order of Court, dated April 16, 2014. Mother's appeal is timely. For the following reasons, Mother's appeal is without merit, and this Court's Order should be affirmed.

1

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## I.    FACTUAL AND PROCEDURAL HISTORY

The relevant history is as follows. The parties wed in January 2004, and D.Z. was born on December 2, 2004. During that time, the parties resided in New Hampshire and Massachusetts. The parties divorced in September 2007 in Massachusetts by a Judgment Nisi. Thereafter, Father agreed to let Mother and child relocate to Pittsburgh. Father's job as a software engineer allowed him to regularly travel back and forth between Boston and Pittsburgh. Father rented an apartment in Pittsburgh. In 2009, the parties entered into a consent custody order that provided Father with custody of D.Z. from Friday to Wednesday, every other week, for a total of 10 overnights per month. In May 2012, and in anticipation of D.Z.'s enrollment in elementary school, Father bought a house in the same school district in which D.Z. resides with his Mother. All the while, Father still commuted from Boston to Pittsburgh. In September 2012, Father petitioned the Court for modification of the 2009 consent custody order. Litigation lasted for over a year and culminated with the instant three-day trial, which provoked this appeal.

After three days of testimony from the parties and witnesses and over a dozen exhibits, this Court granted Father's request for more custody time. Starting in the Fall, Father will enjoy shared physical custody on a week-on-week-off basis, thus providing him with roughly four more days per month with D.Z. than the previous order allotted. Mother sought to be the sole legal custodian on matters of health, travel and extracurricular activities, but this Court opted to keep legal custody shared between the parents. At the end of the third day, which constituted only an *in camera* interview, this Court announced its intention to modify the custody arrangement in favor of a week-on-week-off schedule beginning in the fall of 2014. In the interim, this Court solicited from the parties their recommendations as to the summer 2014 schedule as it was apparent that that both parties hoped to take D.Z. to China to visit with his

2

respective extended families. Although each party submitted rounds of post-trial summer proposals, no 2014 summer scheduled could be concluded by agreement. This Court then issued its March 24, 2014 Order of Court. Soon thereafter the parties brought to the Court's attention some of the document's internal inconsistencies. And so this Court granted Mother's motion for clarification, which in turn resulted in the April 16, 2014 Final Order of Court After Reconsideration. Mother appeals in a timely fashion.

## II. DISCUSSION

In her Concise Statements of Matters Complained of on Appeal, Mother alleges that this Court's decision was unsubstantiated by the evidence presented at trial.

Verbatim, Mother's three statements of errors are as follows:

1. The Trial Court erred in reducing physical custody time of the child with [Mother], contrary to the child's best interest, contrary to the evidence presented regarding the statutory factors to be considered in custody, and without support by the weight of the evidence presented at trial.
2. The Trial Court erred in failing to provide [Mother] with legal custody to address matters such as doctor's visits, travel and passport matters, extracurricular activities, as well as identification of emergency contact persons for the school, contrary to the child's best interest, and without support by the weight of the evidence presented at trial.
3. The Trial Court erred in setting a summer schedule which could result in too great a period of physical custody of the child apart from the [Mother], contrary to the child's best interest, contrary to the evidence presented regarding the statutory factors to be considered in custody, and without support by the weight of the evidence presented at trial.

*See* Mother's Concise Statement of Matters Complained of on Appeal, at ¶¶ 1-3. Boiled down, Mother argues that Father should not have been given equal time, that she should have sole legal custody, and the summer schedule is contrary to the child's best interests. This Court begins its discussion with Mother's first contention.

3

## A. Equally Shared Custody

"A petition for modification of a partial custody to a shared custody order requires the court to inquire into the best interests of the child regardless of whether a 'substantial' change in circumstances has been shown." *Hutchinson v. Hutchinson,* 549 A.2d 999, 1000 (Pa. Super. 1988) (quoting *Karis v. Karis* 544 A.2d. 1328, 1332 (Pa. 1988). "[C]hanged circumstances is incorporated into the review of best interest instead of being a prerequisite for undertaking that review." *Hutchinson,* 549 A.2d at 1001. In a child custody matter, the "paramount concern and the 'polestar of [the] analysis in this case, and a legion of other cases, is the best interests of the child.'" *S.M. v. J.M.* 811 A.2d. 621, 623 (Pa. Super. 2003)(citations omitted). "The 'best interests' standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." *Id.* In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the enumerated factors of 23 Pa.C.S.A. §5328(a). After considering the above standards, this Court determined that shared custody, split equally between the parents, is in D.Z.'s best interests.

This Court initially notes, as the *Hutchinson* Court noted, "notwithstanding the fact changed circumstances are not required to initiate the inquiry and the focus must be the best interests of the children, [this Court] find[s] there were substantial changed circumstances in this case...." *Hutchinson,* 549 A.2d. at 1001. Prior to the trial, the parents were operating under an agreement that was put in place when D.Z. was four-years-old. *See* Consent Order of Court, dated September 29, 2009. The child is now age nine. Father still commutes to Pittsburgh from Boston, but he has bought a house in the same school district as D.Z. so that he may become

4

more involved in his son's life as D.Z. becomes more involved in school and in the community. Father's work schedule allows him to work from Pittsburgh. Due to his flexible work schedule, Father has a greater ability to see D.Z. As was the case in *Hutchinson*, the change in the petitioner's circumstances indicates that a review is necessary. *See Hutchinson*, 549 A.2d. at 1001. The discussion now shifts to an analysis of the custody factors.

Per §5328(a)(1), both parents encourage and permit frequent and continuing contact between the child and the other parent. At times, the parents will have a minor conflict over when that contact takes place, but it is clear that the non-custodial parent has frequent if not daily contact with D.Z. Father calls D.Z. every day that the child is not in his custody. *See* T.T., at 102-103.

Neither parent has committed abuse is the past, and both parents' households are safe and stable environments. Both parents are able to provide adequate physical safeguards and supervision, per §5328(a)(2). Both parents perform every parental duty, per §5328(a)(3). When the child is in a parent's care, that parent will cook for D.Z., help him do his homework, take him to the extracurricular activity, and so forth. *See* T.T., dated March 7, 2014, at 24. To that end, per §5328(a)(4), Father has made great efforts to be apart of D.Z.'s education and community life. It was for this reason that Father purchased a second home in D.Z.'s school district. Father wanted to ensure that D.Z.'s friends could still visit when Father enjoyed custody. *See* T.T., dated February 25, 2014, at 25-27. To be sure, both parents clearly provide stability and continuity. However, the Court finds that a modification to shared custody will better foster the stability and continuity D.Z. has with Father. D.Z. benefits when his Father is involved as much as possible.

5

Per §5328(a)(5), D.Z. has extended family from both sides living in China. Last summer, both parents took D.Z. on a trip to China.[1] This trip appeared to be extremely beneficial to D.Z., albeit it uncomfortable due to the record breaking heat. *See* T.T., dated February 25, 2014, at 77. He learned about the country and his roots. *Id.* He met cousins that he did not even realize he had. *See* T.T., dated March 7, 2014, at 10. Yet, this trip was the source of litigation between the parties. The new custody arrangement provides the parents with flexibility and clarity so that such trips to China are no longer the source of conflict. It is in D.Z.'s best interests to take these trips with his parents so that he might visit extended family. Per §5328(a)(6), the Court notes that D.Z. is an only child.

In terms of §5328(a)(7), the Court notes that D.Z. is high-functioning and mature for his age. He is involved in a plethora of extracurricular activities and is a straight-A student. He is well-spoken and intelligent. But he is still a nine-year-old boy. His reasons for his stated preference are nine-year-old boy reasons. He likes the schedule the way it was. *See* T.T., dated March 7, 2014, at 17. He likes the familiarity of the way things have always been and is apprehensive about changing it, because, for example, he might get the custody days mixed up and take the wrong bus home from school. *Id.*, at 18. When the Court asked if he could change anything about his world, D.Z. said he wished he had less homework. *Id.*, at 24. The Court asked D.Z. how long is too long without seeing his Father or Mother. D.Z. testified that it depends. For example, when he learns that the non-custodial parent has bought him a new toy or game or a new pet, then D.Z. is anxious about seeing the non-custodial parent and vice versa. D.Z. can go without parental contact even longer than normal if what is awaiting him is not a new iPad but a new math book. *Id.*, at 26-28.

---

[1] The parties exchanged custody in China.

But D.Z. recognizes that both his parents love and care for him. *Id.*, at 21. He told the Court that Mother stopped the bleeding when he cut his finger; that Father encourages him to go the extra mile in his school work. *Id.* D.Z. said he likes everything about his parents. *Id.*, at 21-22. Ultimately, any kind of trepidation D.Z. has about the new schedule seems to be more about the logistics of it all, rather than any kind of parental preference. D.Z. displayed not so much a preference but a child's natural hesitation to change what is familiar. Again, the Court reiterates that the modification is not drastic, and that D.Z. will now spend several more days per month with his Father. D.Z. is securely bonded to his Father just as much as he is to his Mother. These bonds should be fostered to the fullest extent possible.

While the parents have at times perhaps undermined the other's authority, there is no evidence that either parent has attempted to turn D.Z. against the other, per §5328(a)(8). On the contrary, both parents instruct D.Z. to obey each parent and follow the rules. For their part, the parents have made efforts to keep their disagreements away from D.Z. *See* T.T., dated February 25, 2014, at 14.

Per §5328(a)(9), both parents are equally able to maintain a loving, stable, consistent and nurturing relationship with D.Z. adequate for his emotional needs. In fact, each parent already does. Father helps D.Z. with his homework, he cooks for D.Z., they play games together. *Id.*, at 14-15. Likewise, both parents are more likely to attend to D.Z.'s daily physical, emotional, developmental educational and special needs, per §5328(a)(10). Father attends all of the child's educational meetings and parent-teacher conferences. *Id.*, at 29-30.

In another case, say, where the parties also lived minutes away from each other, this Court might make a brief notation of such and proceed. However, when discussing §5328(a)(11), this Court is obligated to note that Father maintains a second residence in the child's school district

7

so that he could spend more time with the child. Indeed the second residence is actually nothing new. Father used to rent an apartment on the other side of the city. *Id.*, at 6. But when the child reached elementary school age, Father bought a house in the same school district so that he would feel settled and still be involved in school, friendships, and extracurricular activities . *See* T.T., at 7-8.

Both parents are able to care for the child and make appropriate arrangements, per §5328(a)(12). Indeed, Father makes such arrangements during his custody time. *See* T.T., at 13. He takes D.Z. to and from school, and when need be, arrangements for child care. *Id.* However, a week-on-week-off schedule would provide Father with the maximum flexibility and availability to care for D.Z. Although Father can sometimes work remotely from Pittsburgh, his presence is still required in Boston. A 5-2-2-5 schedule would create unnecessary burdens on Father, and thus be a detriment to his relationship with D.Z. *Id.*, at 82. In making this finding, the Court shares the opinion of Dr. Bernstein, who conducted evaluations of the parties. *Id.*, at 12. *See also* Father's Exhibit 5. It was Dr. Bernstein's opinion that schedules should, ideally, seek to limit the potential for conflict between the parents. *See* T.T., dated February 28, 2014, at 168-169. A week-on-week-off schedule, as opposed to a 5-2-2-5 schedule, limits the need for parental interaction and thus parental conflict.

Per §5328(a)(13) and (14), neither party has a history of abuse, physical or otherwise. There is a certain level of conflict between the parties, and at times they have been less than willing to cooperate. For example, there were situations where each parent unilaterally scheduled medical appointments. *Id.*, at 33-34. There was also a question of whether the doctors knew that Father had a right to be informed. However, because the April 16, 2014 custody order provides clarity

8

for a shared custody arrangement, this Court believes that the level of conflict will decrease as there is less ambiguity as to the rights and responsibilities of the parties.

Per §5328(a)(15), both mental and physical conditions of the parents' households are appropriate. Here, the Court notes that, unlike Mother, Father does not live alone. He is married to M.L. They have been in a continuous relationship for over seven years. *Id.*, at 18. M.L. typically stays in Boston, but will travel with Father to Pittsburgh about once a month. *Id.*, at 19. The child is close with M.L. and also sees him as a source of love and trust. *Id.*, at 19-20. However, Father has not told D.Z. about his sexual orientation or that he is married to another man. *Id.*, 20; 23. D.Z. thinks they are best friends. *Id.*, at 22. Father has decided to wait until D.Z. is older and more mature. *Id.*, at 23. This Court believes that such a decision is Father's prerogative.

Father sought equal shared custody because he believes that the equal arrangement will "benefit D.Z. because he will have a balanced experience where both parents contribute equally in his life." *Id.*, at 18. Father testified that it is important that the child to know this as he grows up. *Id.* This Court agrees. Father has gone to great lengths to ensure not only that he is apart of his child's life, but also that he, like D.Z.'s Mother, is to be considered by the child as a primary source of love, stability and security. This is best achieved by parental involvement. Take, for example, D.Z.'s education. As it stood before the trial, Mother enjoyed custody time for the lion's share of the school days. Father sought to become even more involved in his son's educational life; e.g. Father wanted to do homework with D.Z. and prepare the child for his studies. *Id.*, at 31. There are limits to this kind of involvement if Father does not routinely see the child on school nights. In a greater sense, there are limits to the kind of parent one can be when a caregiver's custodial time is abbreviated.

9

Mother characterizes the Court's decision as a conscious one to limit Mother's time with D.Z. whereas this Court opines that the facts warrant an award that maximizes D.Z.'s time with *both* parents. In other words, it is in the best interests of the child if Father obtains equal custody rights. It is *not* the case that this Court decided to "restrict" Mother's physical custody time or that her time should be reduced because she is somehow unfit.

Semantics aside, Mother is correct that this Court's decision to award equal custody time to Father necessarily means that Mother will have less time with the child. Perhaps at the risk of downplaying Mother's legitimate appeal – an appeal she is well within her rights to take – this Court underscores that that ultimate consequence of the modification is that D.Z. will be spending approximately four more days per month with his Father. Or, put another way, tens of waking hours more per month, most of which occur when the child is in school. "Where the child's parents are determined to be equally fit, or nearly so...the fact that a stable, long-continued and happy relationship has developed between the child and one parent may be of critical importance to the formulation of an appropriate custody decree." *English v. English* 469 A.2d 270, 273 (Pa. Super. 1983).

Mother argues that because she has been the primary caregiver for most of the child's life, this Court is constrained to keeping the status quo. But this Court finds that D.Z. has developed a significant bond to *both* parents. D.Z.'s stable, long-continued and happy relationship with his Mother *is* of critical importance, but so too is his stable, long-continued and happy relationship with his Father. The trial court, when considering a modification, must also consider the risks and advantages to the custody arrangement. *See English*, at 469 A.2d 270, 273. In this case, there is virtually no risk and a great advantage to awarding Father several more days per month.

10

Mother demonstrated her excellent work parenting D.Z., but she provided no substantive counter-argument as to why this Court should avoid granting Father any more time. To be sure, it is Father's burden to prove that the modification is in D.Z.'s best interests. But given the evidence presented at trial, this Court does not see how any arrangement – other than one where D.Z. spends the maximum amount of time with both parents – would be in the child's best interests.

## B. Legal Custody

Mother argues that this Court erred when it failed to grant her sole decision making authority in matters of D.Z.'s health and extracurricular activities. *See* Concise Statement, at ¶2. However the Court's decision is not, as Mother phrases it, "against the weight of the evidence." On the contrary, it would have been against the weight of the evidence had this Court granted her, or Father for that matter, sole decision-making authority. Granting one parent sole legal custody is something of a rarity in child custody cases. To be clear, that is what Mother is seeking – to be the "tiebreaker" who decides the issues indicated in Concise Statement 2. *See* T.T., dated February 28, 2014, at 45-46. Indeed, case law provides that such an award is likely improper when:

> "1) both parents are 'fit'; 2) both desire continuing involvement with their child; 3) both parents are seen by the child as sources of security and love; 4) both parents are able to communicate and cooperate in promoting the child's best interests."

*See Bernard v. Green*, 602 A.2d. 1380, 1381 (Pa. Super. 1990) (quoting *In re Wesley J.K.* 445 A.2d. 1243, 1249 (Pa. Super. 1982). "The absence in the record of animosity of one parent toward the other strengthens the case for shared custody." *In re Wesley J.K.*, 445 A.2d. 1243, 1249.

11

In this case, all four of the above indicators are present. Both parents are fit. The record is replete with examples of parental involvement and illustrations of each parent acting as a source of security and love. Neither parent can legitimately suggest otherwise. The fourth factor, though not as robustly apparent as the first three, is still present nevertheless. Like many of the custody cases that see the light of a courtroom, these parents have their troubles communicating and cooperating. Each has a bit of a tendency to hold each other to the very letter of the custody schedule. For example, after their trip to China, when Father's custody time was about to end with D.Z., Mother, understandably anxious to see D.Z., appeared at Father's house about 15 minutes early than the scheduled pickup time. Father was hesitant to relinquish custody until he was obligated to do so – and missed an opportunity to display an empathic response to Mother's distress. *Id.*, at 78-80. Mother displayed a similar strict adherence during other custody transitions. *See Id. See also Id.*, at 54-55. But the occasional lack of cooperation and communication is nothing abnormal, and it is not as if D.Z.'s best interests or welfare was ever jeopardized because of it. Admittedly, custody disputes do not typically become custody trials without some sort of animosity. *See also* Mother's Exhibit D. In this case, however, no parent has displayed a record of stubbornness or aggression toward the other such that the child's welfare has been adversely affected. Such animosity, with such an effect, might warrant the termination of a parent's decision-making power, but that is not the case here. Here, the parents simply disagree on issues that most parents – divorced or otherwise – often disagree. Even then, the parties have exemplified a truly commendable job of keeping the disagreements away from the child. In other words, supposing that the Court did find that the parents' discord is beyond the pale, the Court would still be less inclined to award a parent sole legal custody, because D.Z. is not harmed by the supposed disharmony.

12

### C. Summer Vacation

Prior to the trial, the parent's summer custody arrangement was the regular schedule except that the parents could each take two 10-day periods with D.Z. The only rule was that the periods could not be back to back such that D.Z. was without the care of the non-custodial parent for more than 10 days. *See* Consent Order of Court, dated October 1, 2009, at 1-2. The new custody order (from which Mother appeals) adheres to the general rule that, for the first summer, D.Z. will not be out of a parent's care for more than 10 days. *See* Final Order of Court After Reconsideration, dated April 16, 2014, at 1-3. By summer 2015, however, each parent will enjoy custody time with D.Z. in 14-day blocks. *See* Final Order of Court After Reconsideration, dated April 16, 2014, at 1-3.

Mother argues that the Court's summer schedule will result in D.Z. being away from Mother for too great a length of time. *See* Mother's Concise Statement, at ¶3. The Court disagrees. While this aspect of the custody order marks the most significant change in the parties' custody arrangement, this change will not kick in until 2015, when D.Z. is 10 years old. For this family, the 14-day arrangement is truly in D.Z.'s best interests. To D.Z.'s great benefit, he has two parents that enrich his life by taking him on trips across the country and around the globe. By the child's estimate, Mother has taken D.Z. to over a dozen national parks, and the child has traveled to 34 states. *See* T.T., dated March 7, 2014, at 24. Last year, both parents took D.Z. on a trip to China, where D.Z. visited with his cousins and grandparents. *Id.*, at 10. *See also* Mother's Exhibits B, C. These summer trips, though a source of growth for D.Z., are a source of conflict and litigation for the parents.

In 2013, the Court held a full day trial on the issue of D.Z.'s trip to China. *See* 726 WDA 2013 (quashed as interlocutory, *see* Superior Court's Order Per Curiam, dated May 22, 2013). A

13

fair amount of time was dedicated to the China trip and travel rights during the last trial. After this, the subject trial, the Court solicited from the parties their recommendations for this summer, so as not to inadvertently prevent the parents from taking D.Z. on the trips upon which the family places a great value. Hours of correspondence with the Court thereafter did not produce an agreement. Perhaps this Court would have been well within its discretion to pick the parent's summer vacation schedule out of a hat. But that would not serve the parents who are trying to schedule beneficial trips for D.Z. and thus it would not serve D.Z.'s best interests. Nor does it serve the family to have the Court micromanage the parents' vacation dates and travel arrangements. And so the best solution is that, as of 2015, the parents will enjoy a summer schedule in two-week blocks. This latitude will enable both the parents to have more flexibility to schedule trips and visits to China. As mentioned above, D.Z. is awfully high-functioning. Such a summer schedule might not be appropriate in another case, but D.Z.'s situation is atypical. He is mature for his age, and he is far more traveled. These slightly longer absences with the non-custodial parent will not be to his detriment, but rather to his great benefit.

## III.    CONCLUSION

For the aforementioned reasons, this Court finds that the facts warrant a shared physical and legal custody award is in D.Z.'s best interests. The Court's determinations are well within its discretion. Therefore, Mother's appeal is without merit and this Court's Order, dated April 16, 2014, should be affirmed.

BY THE COURT:

_____, J.

14